Jonathan C. Uretsky [JU-9612]
Faun M. Phillipson [FP-3289]
Phillipson & Uretsky, LLP
*Attorneys for Plaintiff*
111 Broadway, 8th Floor
New York, New York  10006
(212) 571-1255

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
BONWICK CAPITAL PARTNERS, LLC,   :

         Plaintiff,   :

                                  Index No.: 17-CV-3681

                           :

                         :   Hon.
   -against-
                         :

BOUSTEAD SECURITIES, LLC,
SHINECO, INC. and   :
NETWORK 1 FINANCIAL
SECURITIES, INC.   :
         Defendants.
-------------------------------------------------------X

## COMPLAINT

Plaintiff Bonwick Capital Partners, LLC ("Bonwick"), by and through its attorneys Phillipson & Uretsky, LLP, alleges as follows:

## NATURE OF PROCEEDINGS

1. On or about January 11, 2016, Shineco, Inc. ("Shineco") entered into a contract with Bonwick (the "Agreement", See Exhibit 1), by which Shineco retained Bonwick as the exclusive financial advisor to Shineco in connection with Shineco's intention to pursue an initial public offering ("IPO") for Shineco or other corporate entities.

2. As detailed below, although Bonwick performed its obligations under the Agreement, it has not received the compensation to which it is entitled. Meanwhile, the other Defendants received payment that they would not have received but for Bonwick having performed its obligations under the Agreement. As a result, Shineco breached the Agreement, and the other Defendants have been unduly enriched.

## The Parties

3. Plaintiff Bonwick is a limited liability company duly organized under the laws of the State of New York, with its principal place of business in New York.

4. Upon information and belief, Defendant Shineco, Inc., is a Delaware holding company trading publicly on the Nasdaq market as TYHT. TYHT uses its subsidiaries and variable interest entities' vertically and horizontally integrated production, distribution and sales channels to provide health and well-being focused plant-based products in China. Shineco was formerly known as Beijing Tenet Jove Technological Development Co., Ltd. and changed its name to Shineco, Inc. in June 2005. Shineco, Inc. was founded in 2003 and is based in Beijing, China.

5. Defendant Boustead Securities LLC ("Boustead") is the newly formed entity that came out of Boustead & Co of London's corporate acquisition of Southern California-based Monarch Bay Securities, LLC in early November, 2016, at which point the merged companies rebranded as Boustead Securities, LLC. See Exhibit 2. Boustead is a successor-in-interest to Monarch Bay Securities, LLC. Daniel McClory, who was with Bonwick until July 23rd, 2016, is, upon information and belief, President, Managing Director and Head of Equity Capital Markets and Head of China for Boustead.

6. Defendant Network 1 Financial Securities, Inc. ("Network 1 Securities") is and has been registered to do business in New York since 1988. See

https://files.brokercheck.finra.org/firm/firm_13577 (Network 1 Financial Securities Inc., CRD #13577). The types of business conducted by Network 1 Securities, as listed on its FINRA BrokerCheck Report, include, but are not limited to, underwriting corporate securities and the private placement of securities. See id. Network 1 Securities is the investment banking firm that acted as an underwriter on the Shineco IPO. Upon information and belief, Network 1 Securities maintains its principal office in Red Bank, New Jersey.

## JURISDICTION AND VENUE

7. Jurisdiction is proper pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the Parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. Further, the Agreement specifies New York choice of law.

8. Venue is proper in this district under 28 U.S.C. § 1391 because (i) Bonwick is based in this district; (ii) Shineco is listed on the Nasdaq in this district; (iii) all the parties do business in this district; (iv) most of the funds raised by Bonwick for Shineco's IPO were raised in this district; (v) the escrow funds for the IPO were held in a bank in this district; (vi) a number of the investors were from this district; (vii) Shineco met with most of the Bonwick team in this district; and (viii) the parties held a road show in this district.

## FACTS

9. On January 11, 2016, Shineco retained Bonwick as the exclusive financial advisor to Shineco in connection with Shineco's intention to pursue an initial public offering ("IPO") for Shineco or other related corporate entities.

10. Specifically, Bonwick provided advisory services to the company in the areas of corporate development, corporate finance and/or capital placement transactions, as described in the Agreement.

11.     Bonwick was the lead underwriter for the IPO, and completed all filings with NASDAQ including the S-1 registration statement, documentation and filing.

12.     Ultimately, Bonwick performed over ninety percent (90%) of the total corporate finance work that was performed, and raised over six million dollars ($6,000,000) of the approximate seven million, seven hundred thousand dollars ($7,700,000) total raised by the Shineco IPO on October 20, 2016.

13.     This corporate finance work was performed pursuant to the Agreement.  The Agreement also gave Bonwick the right to bring in other selected dealers, like Defendant Boustead's predecessor firm.  In this regard, the Agreement expressly contemplated that Bonwick may "bring in such other co-managers and selected dealers for the offering…" (See Exhibit 1, Section 1)

14.     Similarly, under Section 1, Bonwick may "introduce other firms, products and services to Shineco as needed during the normal course of business and act as coordinator for all activities within its purview." (See Exhibit 1, Section 1)

15.     Under Section 4, Bonwick was "permitted to assign its rights or delegate its obligations hereunder…" (See Exhibit 1, Section 4)

16.     Bonwick decided to make use of Sections 1 and 4 of the Agreement by utilizing Monarch Bay to finalize the Shineco IPO due to a now-resolved issue with a former financial partner of Bonwick, which the SEC and FINRA have confirmed did not involve Bonwick in any regard. Nevertheless, out of an abundance of caution at the time, Bonwick utilized Monarch pursuant to Sections 1 and 4 of the Agreement so as to ensure completion of the IPO, but at no time did Bonwick relinquish or cede its rights to compensation under the Agreement.

17.     Critically, Bonwick introduced Monarch Bay Securities ("Monarch," the predecessor firm to Defendant Boustead) to Shineco prior to the termination of the Agreement, and then the IPO was subsequently completed within five (5) months of the termination of the Agreement.

18.     Accordingly, although the IPO was finalized at Monarch, Bonwick still fully performed under the Agreement, and is entitled to be fully compensated as described in the Agreement.

19.     Specifically, Section 2(a)(i) of the Agreement states that:

> "Bonwick shall receive upon Closing: (i) a Success Fee, payable in cash, equal to seven percent (7%) of the gross amount to be disbursed to the Company form [sic] such Closing, plus (ii) warrants in the entity financed, with a cashless exercise provision, equal to five percent (5%) of the gross amount to be disbursed to the Company from such Closing, exercisable at a strike price equal to one hundred and twenty percent (120%) of the fair market value price of the common stock for the Company as of the date the Company receives the funds, in whole or in part, at any time within five (5) years from issuance."

20.     Further, and significantly, the Agreement clearly states that

> "…Bonwick shall be entitled to a Success Fee(s), as defined above, if the Company completes a transaction with a party with which Bonwick had introduced prior to such termination (collectively, the Identified Party (ies)") during the twelve (12) month period following the termination of this Agreement." (Section 5.)

21.     Other fees due to Bonwick included reimbursement of reasonable out-of-pocket expenses regardless of whether any services were performed (Section 2(b)), and a one-time fee of USD $50,000 (Section 2(c)).

22.     As illustrated herein, Shineco completed the transaction with an Identified Party, Monarch, within the allowable twelve (12) month period.  Despite the work performed for Shineco and despite the successful completion of the IPO, Bonwick has not received any fees or expenses from Shineco or from the other Defendants.

23. But for Bonwick's work, the Shineco IPO could not have occurred. Bonwick raised the overwhelming supermajority of funds raised for the IPO, and did the majority of the filing and document preparation as well.

24. Shineco did not return the over $6 million to Bonwick, nor did Shineco pay Bonwick any fees based on the over $6 million that Bonwick had raised.

25. Bonwick worked with, and had a direct relationship with, both Monarch and Network 1.

26. Shineco paid Monarch certain fees and/or expenses that Monarch would not have been able to obtain but for Bonwick's work for Shineco.

27. Shineco paid Network 1 certain fees and/or expenses that Network 1 would not have been able to obtain but for Bonwick's work for Shineco.

28. Based on the foregoing, since the Agreement is a valid, legally binding and enforceable contract, Bonwick is entitled to the Success Fee, 5% warrants, expense reimbursements and the Fee (the "Payment").

29. The cash portion owed to Bonwick under the Agreement is $539,654.85.

30. The fee was $50,000.

31. As for the warrants, the agreement accounts for 71,383 warrants with a cashless exercise price of $5.40. Based on the high close on September 28, 2016 of $28.88, the warrants were worth $1,676,070 (there is still the possibility that they could be worth more in the future, and if so, Bonwick reserves the right to revise this number accordingly).

32. Shineco's failure to remit the Payment constitutes a breach of contract, and in the alternative raises claims for unjust enrichment, *quantum meruit*, and money had & received.

33. Both Monarch and Network 1, while not direct parties to the contract, worked with Bonwick and knew the work performed by Bonwick and the compensation Bonwick was to receive. Both are liable to Bonwick for unjust enrichment and *quantum meruit*.

### **First Cause of Action (Breach of Contract)**

34. Bonwick repeats and realleges all the allegations set forth above as if set forth in full detail herein.

35. The Agreement (Exhibit 1) is a valid, binding and enforceable contract.

36. Bonwick performed its obligations under the Agreement.

37. Shineco accepted the results of Bonwick's performance, but has not made payment to Bonwick.

38. The lack of payment to Bonwick constitutes a breach of contract.

39. The total owed to Bonwick, exclusive of reimbursable fees, is $2,265,724.85 plus interest.

40. By reason of the foregoing, Bonwick has been damaged in the amount of $2,265,724.85 plus interest and is entitled to judgment against Shineco (THYT) therefor.

### **Second Cause of Action (Unjust Enrichment)**

41. Bonwick repeats and realleges all the allegations set forth above as if set forth in full detail herein.

42. Despite the work performed for Shineco and despite the successful completion of the IPO, Bonwick has not received any fees or expenses from Shineco or from Monarch.

43. But for Bonwick's work, the Shineco IPO could not have occurred. Bonwick raised the overwhelming supermajority of funds raised for the IPO, and did the majority of the filing and document preparation as well.

44.     Shineco did not return the over $6 million to Bonwick.

45.     Shineco paid Monarch certain fees and/or expenses that Monarch would not have been able to obtain but for Bonwick's work for Shineco.

46.     Shineco paid Network 1 certain fees and/or expenses that Network 1 would not have been able to obtain but for Bonwick's work for Shineco.

47.     Both Monarch and Network 1 had a direct relationship with Bonwick.

48.     Both Monarch and Network 1 were enriched at Bonwick's expense.

49.     It is against equity and good conscience to permit Boustead (the successor to Monarch) and Network 1 to retain the benefits they each received from the Shineco IPO when Bonwick has not been compensated.

50.     By reason of the foregoing, Bonwick has been damaged in the amount of $2,265,724.85 plus interest and is entitled to judgment against Boustead and Network 1 therefor, limited, however, to the total amount each received from the Shineco IPO or related transactions.

## Third Cause of Action (*Quantum Meruit*)

51.     Bonwick repeats and realleges all the allegations set forth above as if set forth in full detail herein.

52.     In the alternative, should the Agreement somehow be determined unenforceable for any reason, Shineco is liable to Bonwick under *quantum meruit*.

53.     Bonwick performed its services in good faith.

54.     Specifically, Bonwick provided advisory services to Shineco in the areas of corporate development, corporate finance and/or capital placement transactions.

55.     Bonwick was the lead underwriter for the IPO, and completed all filings with NASDAQ including the S-1 registration statement, documentation and filing.

56. Ultimately, Bonwick performed over ninety percent (90%) of the total corporate finance work that was performed, and raised over six million dollars ($6,000,000) of the seven million, seven hundred thousand dollars ($7,700,000) total raised by the Shineco IPO on October 20, 2016.

57. Shineco accepted these services, and by extension, in taking payment from Shineco pursuant to the IPO, so did Monarch (Boustead) and Network 1.

58. All of the Defendants knew that Bonwick had a reasonable expectation of compensation for its services.

59. The reasonable value of the services Bonwick provided is $2,265,724.85 plus interest.

60. By reason of the foregoing, Bonwick has been damaged in the amount of $2,265,724.85 plus interest and is entitled to judgment, jointly and severally, against all Defendants.

### Fourth Cause of Action (Money Had and Received)

61. Bonwick repeats and realleges all the allegations set forth above as if set forth in full detail herein.

62. Bonwick raised over six million dollars ($6,000,000) of the seven million, seven hundred thousand dollars ($7,700,000) total raised by the Shineco IPO on October 20, 2016.

63. A portion of Bonwick's $6 million was used to pay Monarch (Boustead) and Network 1.

64. Shineco received money belonging to Bonwick.

65. Monarch (Boustead) received money belonging to Bonwick.

66. Network 1 received money belonging to Bonwick.

67. Each of the Defendants benefitted from receipt of the Bonwick $6 million, as but for that $6 million the Shineco IPO never would have taken place, and Monarch and Network 1 would never have been paid.

68. Under principles of equity and good conscience, Shineco should not be permitted to keep the Bonwick $6 million.

69. Under principles of equity and good conscience, Monarch (Boustead) and Network 1 should not be permitted to keep the portion of the Bonwick $6 million they received as payment for their roles in connection with the Shineco IPO.

70. Accordingly, Defendants owe Bonwick the sum of $6 million, plus interest, for money had and received by them, which funds belong to Bonwick.

### Fifth Cause of Action (Breach of the Covenant of Good Faith & Fair Dealing)

71. Bonwick repeats and realleges all the allegations set forth above as if set forth in full detail herein.

72. Shineco agreed to abide by the terms of the Agreement. Implied in this contractual relationship was Shineco's covenant of good faith and fair dealing.

73. Shineco's actions as set forth above, including but not limited to its acceptance of Bonwick's efforts and performance and its failure to remit payment in return as set forth in the Agreement, breached this implied covenant of good faith and fair dealing.

74. Shineco's breach has caused and is causing substantial and imminent harm and damage to Bonwick.

75. By reason of the foregoing, Bonwick has been damaged in the amount of $2,265,724.85 plus interest and is entitled to judgment, jointly and severally, against all Defendants.

### Sixth Cause of Action (Accounting against all Defendants)

76. Bonwick repeats and realleges all the allegations set forth above as if set forth in full detail herein.

77. Bonwick seeks from each and every Defendant a formal accounting of all funds raised in connection with the Shineco IPO (whether by Monarch Bay, Boustead, Network 1, or any other entity), and/or any and all funds raised in connection with Shineco's intention to pursue corporate finance activities for the time frame January 11, 2016 through the present.

**Seventh Cause of Action (Contractual Reimbursement Claim against Shineco)**

78. Bonwick repeats and realleges all the allegations set forth above as if set forth in full detail herein.

79. Pursuant to the Agreement between Shineco and Bonwick, Shineco agreed to reimburse Bonwick for all legal (and other) expenses incurred in connection with any action involving Bonwick by reason of Bonwick's retention under the Agreement.

80. Specifically, "Schedule A" of the Agreement contains indemnification, reimbursement and contribution language, and it is the reimbursement for all reasonable expenses (including legal fees, costs and expenses) that Bonwick now seeks from Shineco, pursuant to the Agreement, arising from Bonwick's retention by Shineco.

81. Bonwick seeks contractual reimbursement for all reasonable expenses in an amount to be proven at trial.

WHEREFORE, Bonwick demands judgment as follows:

(a) in Bonwick's favor and against Shineco on the First Cause of Action for $2,265,724.85 plus interest at the legal rate;

(b) in Bonwick's favor and against Boustead and Network 1 on the Second Cause of Action in the amount of $2,265,724.85 plus interest, limited, however, to the total amount each received from the Shineco IPO or related transactions;

(c) in Bonwick's favor and against all Defendants on the Third Cause of Action for $2,265,724.85 plus interest at the legal rate;

(d) in Bonwick's favor and against all Defendants on the Fourth Cause of Action for the sum of $6 million, plus interest at the legal rate;

(e) in Bonwick's favor and against all Defendants on the Fifth Cause of Action for $2,265,724.85 plus interest at the legal rate;

(f) on the Sixth Cause of Action, for an accounting against all Defendants;

(g) in Bonwick's favor and against Shineco on the Seventh Cause of Action for an amount to be proven at trial; and

(h) for such other and further relief as the Court may deem just and proper.

Dated: New York, New York
May 16, 2017

                              PHILLIPSON & URETSKY, LLP

By:   /s/ Jonathan C. Uretsky
       Faun M. Phillipson, Esq. [FP-3289]
       Jonathan C. Uretsky, Esq. [JU-9612]
       Phillipson & Uretsky, LLP
       111 Broadway, 8th Floor
       New York, New York 10006
       (212) 571-1255
       *Attorneys for Plaintiff*